UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP SANDERS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OFFICER MARK BISHOP AND IGNACIO ) <br> RUIZ, ) <br> ) <br> Defendants. ) <br> ) <br> _____ ) | 1:06-cv-1264 OWW GSA <br><br> SCHEDULING CONFERENCE ORDER <br><br> Discovery Cut-Off: 7/1/08 <br><br> Non-Dispositive Motion Filing Deadline: 7/15/08 <br><br> Dispositive Motion Filing Deadline: 8/1/08 <br><br> Settlement Conference Date: 7/10/08 10:00 Ctrm. 10 <br><br> Pre-Trial Conference Date: 10/14/08 11:00 Ctrm. 3 <br><br> Trial Date: 11/25/08 9:00 Ctrm. 3 (JT-4 days) |

I.   Date of Scheduling Conference.

   March 20, 2008.

II.   Appearances Of Counsel.

   Plaintiff, Phillip Sanders, appeared in pro se.

   Weakley, Ratliff, Arendt & McGuire, LLP by Erica M. Camarena, Esq., appeared on behalf of Defendants.

///

///

**III.   Summary of Pleadings.**

   <u>Defendants' Contentions</u>

   1.   Plaintiff Phillip Sanders (hereinafter "Plaintiff"), brings this action against Defendants, both employees of the Fresno Police Department, for an alleged violation of his Fourth Amendment rights by arresting him without probable cause. Plaintiff's Third Amended Complaint alleges two separate incidents:

   a.   On or about May 6, 2006, Officer Ruiz allegedly followed Plaintiff home, asked Plaintiff if he was on probation to which Plaintiff responded, "yes," searched Plaintiff's vehicle, and arrested him without reasonable cause. He was then transported to Fresno County Jail where he remained for three days.

   b.   On or about December 3, 2005, while Plaintiff was waiting at a bus stop, Defendant Officer Bishop allegedly asked Plaintiff if he was on probation to which he responded "yes." Officer Bishop asked Plaintiff to stand and place his hands on the police car and asked Plaintiff the reason for his probation. Plaintiff responded that the information was already available to him, and that Officer Bishop was already aware of the reasons Plaintiff was on probation. Officer Bishop allegedly searched Plaintiff and placed him under arrest without probable cause. Plaintiff was transported to Fresno County Jail where he remained for four days.

   2.   Plaintiff does not allege any state law claims and seeks compensatory damages for loss of tuition fees, costs and legal fees. In addition, Plaintiff also seeks punitive damages

2

against both officers.

3.  With respect to the May 6, 2006, incident, Defendant Officer Ruiz contends that at approximately 10:47 p.m., Officer Ruiz was working a double unit, uniformed patrol detail, assigned to the Southwest District Crime Suppression Team.  Officer Ruiz, who at the time was a Probation Liaison, was given instructions to pick up Plaintiff for a probation hold and was provided with a photograph of Plaintiff for identification purposes.  Officer Ruiz knew that Plaintiff was on active felony probation for a prior narcotic conviction.

4.  As part of his active duties, Officer Ruiz and his partner made contact with Plaintiff who was sitting inside his girlfriend's vehicle, which was parked partially in the driveway of Plaintiff's residence at 347 W. Almy Avenue.  The car was not pulled over while Plaintiff was driving as he alleges.  Officer Ruiz approached the driver's window of the car and confirmed Plaintiff was the probationer in the photograph.  Plaintiff exhibited objective symptoms of being under the influence of a controlled substance, specifically, rock cocaine base or "crack cocaine."  The officers observed that Plaintiff had dilated pupils, no pupillary reaction to light, eyelid tremors, and involuntary muscle movements.  Plaintiff made statements to the officers such as "I'm not high" and "you're harassing me because I'm black."

5.  Officer Ruiz searched Plaintiff's car and did not find any illegal substances or contraband.  He arrested Plaintiff for being in violation of his probation terms and conditions and booked him into the Fresno County Jail.

6.  As for the December 3, 2005, incident, at or about 9:17 p.m., Officer Bishop was working a double unit assigned to the Southwest Crime Suppression Unit.  They were patrolling a high narcotic and high gang area of Fig and North Avenues in Fresno.  They observed a black male (Plaintiff) walk off from a group of subjects on the southeast corner of Fig and North, a location known for narcotic related activity.  The officers made consensual contact with Plaintiff who was walking northbound in an open parking lot.  Plaintiff stated he was just walking to the bus stop.  Plaintiff was asked if he was on parole or probation and Plaintiff responded that he was not.  Plaintiff said he was going to the store and pointed east, away from where the bus stop was.

7.  Officer Bishop recognized Plaintiff from at least two prior felony arrests.  Due to his previous contacts with Plaintiff, Officer Bishop suspected Plaintiff was on probation.  Officer Bishop made contact with Plaintiff and smelled an alcoholic odor coming from him, and observed that he was very argumentative and uncooperative.  Officer Bishop conducted a records check and confirmed that Plaintiff was on active felony probation, open to search.  The information listed on the Sharenet (probation information that goes through dispatch) indicated a condition of Plaintiff's probation was "no alcohol."  Plaintiff was searched, however, no illegal items or contraband were found on his person.  Due to the no alcohol condition and lying to the officers, Plaintiff was arrested for violation of his probation under Penal Code § 1203.2A.  Plaintiff's probation officer was contacted and advised of the arrest.

**Defendants' Legal Contentions**

8.  Defendants are still of the position that Plaintiff's Amended Complaint fails to state a claim and the allegations regarding the search and seizure are vague. Defendants also do not see any correlation between the incidents as alleged and occurred six months apart.

9.  It is Defendants' contention that at the time of Plaintiff's arrests, Plaintiff was then on searchable probation.

10. If someone is on searchable probation, California case law permits an officer to conduct a search for no reason, that is without "reasonable suspicion" or any other amount of particularized suspicion, as long as the probation condition permits a search by any law enforcement officer without a warrant. *People v. Brown*, 191 Cal.App.3d 761, 765-766 (1987). An officer may search that person and any property under his control without any particularized suspicion, and without first contacting the probation officer. *People v. Bravo*, 43 Cal.3d 600, 609-610 (1987). Adult probationers *consent* to the condition when they choose probation over prison. *People v. Ramos*, 34 Cal.4th 494, 506 (2004); *People v. Miller*, 124 Cal.App.4th 216, 221 (2004). Adult probationers thereby waive their Fourth Amendment right to privacy.

11. From a federal standpoint, the Ninth Circuit has not resolved the conflict of whether a warrantless probation search needs to be supported by reasonable suspicion. Nevertheless, the United States Supreme Court has validated California's parole search law and held that suspicionless searches of parolees are not prohibited under the Fourth Amendment. Parolees, unlike

5

average citizens, do not have a legitimate expectation of privacy under the Fourth Amendment based on their parolee status and the plain terms of their parole search condition. *Samson v. California*, 126 S.Ct. 2193, 2199 (2006).

12. Although the Supreme Court in *Samson* did not address suspicionless "probation" searches, the Court did incorporate California probation search cases in its analysis. Additionally, the Court rested its holding on California's parole search condition that "severely diminishes" a released prisoner's reasonable expectation of privacy. Because most probation search conditions are identical to parole search conditions in their language permitting searches by any law enforcement officer with or without cause, a probationer subject to a search condition - just like a state parolee - has no greater expectation of privacy for Fourth Amendment purposes than a parolee.

13. The Ninth Circuit has consistently found no "constitutional difference between probation and parole for purposes of the Fourth Amendment." *Motley v. Parks*, 432 F.3d 1072, 1083, fn.9 (en banc) (9th Cir. 2005). Any attempt by the federal court to find a meaningful distinction between the validity of a parole search condition and an identical probation search condition, will be difficult given the Supreme Court's holding in *Samson*.

14. Defendants are also entitled to qualified immunity. Viewing the facts most favorable to Plaintiff, he has failed to establish that his arrest and search of his person and/or property violated his constitutional rights.

15. Qualified immunity is "an entitlement not to stand

trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). The privilege of qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* Courts stress "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). A quick resolution of a qualified immunity claim is essential. *Will v. Hallock*, 126 S.Ct. 952, 955 (2006).

16. The initial inquiry in a qualified immunity analysis is, whether the facts alleged, taken in the light most favorable to the Plaintiff, show the officer's conduct violated a constitutional right. *Saucier, supra*, at 201 (2001). The next inquiry, if a constitutional violation could be made out, is whether the right protected was clearly established. *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

17. Under the doctrine of qualified immunity, a police officer's conduct is shielded if a reasonable officer could have believed his conduct to be lawful, in light of the clearly established law and information the officer possessed. *Andersen*, at 641. The purpose of qualified immunity is to permit police officers to undertake their responsibilities without fear that

7

they will be held liable in damages for actions that appear reasonable at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).

18. It appears from the facts as alleged, that Officers Bishop and Ruiz would be entitled to qualified immunity.

### Plaintiff's Contentions

1. "In response to city atty scheduling conference report 1st officer ruiz stated he had pictures and the probation office sent him out to arrest me over looking a probation report on 6/8/06 were probation stated they didn;t know why I was arrested on 5/7/06 meaning 5/6/06 booking layover dated and still didn't have the reports #06-41208 1 mth afterword (attachment #1 probation report)the first paragraph doesn't make scence when 1 veiws the reports and the scheduling statement,next the lie told I was sitting in grilfriends car when I was driveing is just bold face lie I have witness .next officer bishop stated he was rideing with south west crime unit and seen me walk away from a group a lie had I known this lie I could of got video tapes from the store because of the area, store had cameras everwere next its kind of funny that bishop is listed as 1 does in atty kapetan civil case for a trumped up police report were bishop wrote a gun weapon charge when weapon was not broom a mistake I;m in court with the atty about that for not catching the error state superiorcourt judge alan simpson, not to speak of a illegal search in 03 by bishop with docs to prove that I never filed adout inshort he left a paper trail last if i was doing something illegal they could have asked the store for the tapes and tested me last bishop called probation officer allmost 1 week later a

8

said I confessed to drinking to him when I thought you call probation before one is arrested like parole another attemp to trump up some more charges like the weapons error . as fare as the compensatory Im asking max under the law and the fastist motion, trail dates court has."

IV.   Orders Re Amendments To Pleadings.

    1.   The parties do not presently contemplate amending the pleadings.

V.   Factual Summary.

    A.   Admitted Facts Which Are Deemed Proven Without Further Proceedings.

        1.   Plaintiff, Phillip Sanders, is a resident of the Eastern District of California, Fresno Division, and a citizen of the United States.

        2.   Defendants were, at all times alleged in the lawsuit, employed as police officers by the City of Fresno and were acting in the course and scope of their employment and under color of law.

        3.   On May 6, 2006, Officer Ruiz did place Plaintiff under arrest and booked him in to the Fresno County Jail.

        4.   On or about November 30, 2005, Officer Bishop did place Plaintiff under arrest and booked him in to the Fresno County Jail.

        5.   Plaintiff was on searchable probation at the time of both these arrests.

    B.   Contested Facts.

        1.   All remaining facts in this case are contested, including the issues of liability and damages, if any.

9

VI. Legal Issues.
   A.   Uncontested.
      1.   Jurisdiction exists under 28 U.S.C. § 1331 and the Civil Rights Act, 42 U.S.C. § 1983.
      2.   Venue is proper under 28 U.S.C. § 1391.
   B.   Contested.
      1.   Whether Plaintiff was in violation of his probation at the time of his arrest.
      2.   Whether Defendants violated Plaintiff's constitutional rights under federal law.
      3.   Whether Defendants are entitled to qualified immunity.
      4.   The nature and extent of Plaintiff's injuries and damages, if any.

VII. Consent to Magistrate Judge Jurisdiction.
   1.   The parties have not consented to transfer the case to the Magistrate Judge for all purposes, including trial.

VIII.   Corporate Identification Statement.
   1.   Any nongovernmental corporate party to any action in this court shall file a statement identifying all its parent corporations and listing any entity that owns 10% or more of the party's equity securities.  A party shall file the statement with its initial pleading filed in this court and shall supplement the statement within a reasonable time of any change in the information.

IX.   Discovery Plan and Cut-Off Date.
   1.   The Defendants will make a decision as to whether to move to sever issues depending upon the relationship of the

incidents alleged and whether they pertain to the same conduct or course of conduct.

    2.    The parties are ordered to complete all discovery on or before July 1, 2008.

    3.    The parties are directed to disclose all expert witnesses, in writing, on or before May 6, 2008.  Any supplemental or rebuttal expert disclosures will be made on or before June 6, 2008.  The parties will comply with the provisions of Federal Rule of Civil Procedure 26(a)(2) regarding their expert designations.  Local Rule 16-240(a) notwithstanding, the written designation of experts shall be made pursuant to F. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder.  Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

    4.    The provisions of F. R. Civ. P. 26(b)(4) shall apply to all discovery relating to experts and their opinions.  Experts may be fully prepared to be examined on all subjects and opinions included in the designation.  Failure to comply will result in the imposition of sanctions.

X.    Pre-Trial Motion Schedule.

    1.    All Non-Dispositive Pre-Trial Motions, including any discovery motions, will be filed on or before July 15, 2008, and heard on August 22, 2008, at 9:00 a.m. before Magistrate Judge Gary S. Austin in Courtroom 10.

    2.    In scheduling such motions, the Magistrate Judge may grant applications for an order shortening time

pursuant to Local Rule 142(d).  However, if counsel does not obtain an order shortening time, the notice of motion must comply with Local Rule 251.

    3.   All Dispositive Pre-Trial Motions are to be filed no later than August 1, 2008, and will be heard on September 8, 2008, at 10:00 a.m. before the Honorable Oliver W. Wanger, United States District Judge, in Courtroom 3, 7th Floor. In scheduling such motions, counsel shall comply with Local Rule 230.

XI.  Pre-Trial Conference Date.

    1.   October 14, 2008, at 11:00 a.m. in Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger, United States District Judge.

    2.   The parties are ordered to file a Joint Pre-Trial Statement pursuant to Local Rule 281(a)(2).

    3.   Counsel's attention is directed to Rules 281 and 282 of the Local Rules of Practice for the Eastern District of California, as to the obligations of counsel in preparing for the pre-trial conference.  The Court will insist upon strict compliance with those rules.

XII. Trial Date.

    1.   November 25, 2008, at the hour of 9:00 a.m. in Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger, United States District Judge.

    2.   This is a jury trial.

    3.   Counsels' Estimate Of Trial Time:

        a.   4 days.

    4.   Counsels' attention is directed to Local Rules

of Practice for the Eastern District of California, Rule 285.

## XIII. Settlement Conference.

1. A Settlement Conference is scheduled for July 10, 2008, at 10:00 a.m. in Courtroom 10 before the Honorable Gary S. Austin, United States Magistrate Judge.

2. Unless otherwise permitted in advance by the Court, the attorneys who will try the case shall appear at the Settlement Conference with the parties and the person or persons having full authority to negotiate and settle the case on any terms at the conference.

3. Permission for a party [not attorney] to attend by telephone may be granted upon request, by letter, with a copy to the other parties, if the party [not attorney] lives and works outside the Eastern District of California, and attendance in person would constitute a hardship. If telephone attendance is allowed, the party must be immediately available throughout the conference until excused regardless of time zone differences. Any other special arrangements desired in cases where settlement authority rests with a governing body, shall also be proposed in advance by letter copied to all other parties.

4. Confidential Settlement Conference Statement. At least five (5) days prior to the Settlement Conference the parties shall submit, directly to the Magistrate Judge's chambers, a confidential settlement conference statement. The statement should not be filed with the Clerk of the Court nor served on any other party. Each statement shall be clearly marked "confidential" with the date and time of the Settlement Conference indicated prominently thereon. Counsel are urged to

request the return of their statements if settlement is not achieved and if such a request is not made the Court will dispose of the statement.

    5. The Confidential Settlement Conference Statement shall include the following:

        a. A brief statement of the facts of the case.

        b. A brief statement of the claims and defenses, i.e., statutory or other grounds upon which the claims are founded; a forthright evaluation of the parties' likelihood of prevailing on the claims and defenses; and a description of the major issues in dispute.

        c. A summary of the proceedings to date.

        d. An estimate of the cost and time to be expended for further discovery, pre-trial and trial.

        e. The relief sought.

        f. The parties' position on settlement, including present demands and offers and a history of past settlement discussions, offers and demands.

**XIV. Request For Bifurcation, Appointment Of Special Master, Or Other Techniques To Shorten Trial.**

    1. If punitive damages are sought, the amount of punitive damages, if any, shall be tried in a separate, second phase in a continuous trial before the same jury.

**XV. Related Matters Pending.**

    1. There are no related matters.

**XVI. Compliance With Federal Procedure.**

    1. The Court requires compliance with the Federal

Rules of Civil Procedure and the Local Rules of Practice for the Eastern District of California.  To aid the court in the efficient administration of this case, all counsel are directed to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of Practice of the Eastern District of California, and keep abreast of any amendments thereto.

**XVII.    Effect Of This Order.**

    1.    The foregoing order represents the best estimate of the court and counsel as to the agenda most suitable to bring this case to resolution.  The trial date reserved is specifically reserved for this case.  If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent scheduling conference.

    2.    Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.

    3.    Failure to comply with this order may result in the imposition of sanctions.

IT IS SO ORDERED.

**Dated:   March 21, 2008**                 /s/ Oliver W. Wanger
                                               UNITED STATES DISTRICT JUDGE