UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP SANDERS,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>OFFICERS MARK BISHOP AND IGNACIO RUIZ,<br><br>　　　　Defendants. | 1:06-cv-01264 OWW GSA<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 98) |

I. **INTRODUCTION**.

Plaintiff Phillip Sanders ("Sanders") brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging he was improperly searched and arrested without probable cause by Fresno Police Department ("FPD") officers in violation of his Fourth Amendment rights. The allegations concern arrests of Plaintiff on November 30, 2005 by Defendant Officer Mark Bishop ("Bishop") and on May 6, 2006 by Defendant Officer Ignacio Ruiz ("Ruiz").

Before the court for decision are two motions by Defendants. First, Defendants move for summary judgment on the following grounds: a) Plaintiff has failed to establish a Fourth Amendment violation because Plaintiff waived his Fourth Amendment rights as

1

part of his probation conditions and thus had no reasonable expectation of privacy, b) even though Plaintiff's Fourth Amendment rights were waived, Defendant Officers had probable cause and reasonable suspicion when they searched and arrested Plaintiff for probation violations, and c) Defendant Officers are entitled to qualified immunity.  Second, and in the alternative, Defendants move to sever this action pursuant to Fed. R. Civ. P. 21 on the grounds that the two arrest incidents alleged by Plaintiff are unrelated, involve different parties, there are no questions of law or fact common to both parties, and it would prejudice Defendants to try these incidents together.  The motion to sever was granted in an order dated December 15, 2008.  (Doc. 116.)

## II. FACTUAL AND PROCEDURAL BACKGROUND.

**A.   October 2002 Arrest Leading to Probation.**

A review of Plaintiff's prior arrests is in order as they provide background to the instant lawsuit and demonstrate Defendant Officers' history of interactions with Plaintiff. Defendants maintain that they have received extensive training in handling individuals on probation, including how to make re-arrests of probationers who violate their probation terms and how to evaluate behavior and demeanor to determine whether a person is under the influence of alcohol or a controlled substance. (Defendants' Separate Statement of Undisputed Material Facts ("DSSUMF") ## 1 and 2.)  Both Officers Bishop and Ruiz have been employed as officers with the FPD since 1998.  (Docs. 98-8 and 98-10, Declaration of Mark Bishop and Declaration of Ignacio

Ruiz.)

On October 2002, Plaintiff was arrested for felony possession of firearms, public disturbance, and resisting arrest after he had an altercation with a bus driver on a city bus. (DSSUMF #3.) Plaintiff entered felony and misdemeanor guilty pleas to all charges and was scheduled to appear for sentencing on April 13, 2004. (DSSUMF ## 4 and 5.)

On April 13, 2004, Plaintiff appeared with his attorney Eddie Ruiz at his sentencing in the Superior Court of California, County of Fresno, before Judge Edward Sarkisian for the October 2002 arrest incident. (DSSUMF #10.) Judge Sarkisian sentenced Plaintiff to four years in prison and then stayed execution of the sentence for three years, granting probation based on a number of terms and conditions. (DSSUMF #12.) On the record, Judge Sarkisian stated the terms and conditions of probation, including a condition not to consume any alcohol and a search and seizure condition:

> And I want to state at this point, and I'll state at the end of the sentencing proceeding, that if Mr. Sanders doesn't literally follow every term and condition of probation that I'm going to state, the Court will have no hesitancy in lifting the stay and committing him to the Department of Corrections.
>
> It's clear from a reading of this report that Mr. Sanders has, and hopefully in the future will not have, but has difficulty in complying with a grant of probation or parole. But I'm going to pronounce judgment, stay execution of that judgment, and then proceed as I indicated at the time the plea was entered.
>
> So in this matter for the offense of Penal Code Section 12021, subdivision (a)(1), as charged and pled to in Count One, the Court notes that the factors in aggravation far outweigh those in mitigation, noting Defendant's repeated appearances before the Court and his prior inability to comply with probation/parole.

3

|   |   |
|---|---|
| 1 | Those factors clearly outweigh the factors in mitigation. So as to the offense of 12021(a) in Count One it will be the judgment and sentence of the Court that the Defendant be imprisoned in the Department of Corrections for the upper term or aggravated term of three years. |

Those factors clearly outweigh the factors in mitigation. So as to the offense of 12021(a) in Count One it will be the judgment and sentence of the Court that the Defendant be imprisoned in the Department of Corrections for the upper term or aggravated term of three years.

Defendant will be further ordered to serve an additional and consecutive one year term for the enhancement pursuant to Penal Code Section 667.5, subdivision (b), for a total commitment of four years.

Consistent with the Court's indicated sentence, the Court will stay execution of that judgment. Noting that the probation report itself states that the Defendant is eligible for probation, but in their view not a suitable candidate for a grant of probation. I will stay execution of that judgment for a period of three years. And find that the Defendant is an extremely marginal candidate for a grant of probation at this time. For a period of three years under the following terms and conditions:

First, that he is to obey all laws and all directives of the probation officer.
He is ordered to report to and maintain contact with the Probation Department as directed by the Probation Office.
He is further ordered not to drive a vehicle unless properly licensed and insured.
Additionally, to seek and maintain gainful employment during the period of probation.
Additionally, not to have in his possession any restricted or dangerous drugs or narcotics, nor to associate with known users or sellers.
Further, to submit to drug testing and to participate in and complete a treatment program for narcotic abuse as directed by the probation officer.
Further, *not to consume any alcoholic beverages* or be in places where alcohol is the chief item of sale.
Additionally, to submit to alcohol testing and to participate and complete a treatment program for alcohol abuse as directed by the Probation Office.
Further, to attend and complete any anger management classes as directed by the probation officer.
Further, to participate and complete any mental health treatment as directed by the probation officer.
Further, to sign all necessary waivers of confidentiality concerning these treatment programs.
He is further ordered not to possess any type of firearm, dangerous or deadly weapon.
Additionally, not to use any force or violence or the threat of force or violence against any person.
Additionally, not to have any contact with the victim in this case or any members of the victim's family.

4

> *To submit his person, property, place of abode and vehicle to search and seizure at any time of the day or night, with or without a warrant, by any peace or probation officer....*
>
> And specifically to enroll in and complete any substance abuse program...
>
> And, Mr. Ruiz, I'll give you a moment to confer with Mr. Sanders to ascertain if he understands and accepts the conditions of probation as just stated.

(DSSUMF #13, Reporter's Transcript from April 13, 2004 Sentencing Hearing at 22:4-26:17)(emphasis added).

After conferring with Mr. Sanders, Mr. Ruiz told the court, "He informs me he understands and accepts those conditions." (Reporter's Transcript at 26:20-21.)  Judge Sarkisian then asked Mr. Sanders whether that was correct and Sanders replied, "Yes, sir."  (Reporter's Transcript at 26:22-23.)

On July 2, 2004, Plaintiff signed the Probation Department Recommendations and Court Orders, which included a no-alcohol condition and a search and seizure condition that stated, "[s]ubmit person and property, including financial records, vehicles, and place of abode to search and seizure at any time of the day or night by any law enforcement officer, including probation officers, with or without a search warrant, or other process."  (DSSUMF ## 19 and 20.)

At his deposition, Plaintiff did not recall the judge telling him to refrain from alcohol consumption as part of his probation conditions.  (DSSUMF #17.)  He also asserts in his "Third Amended Complaint" that "[n]o probation instructions were signed permitting any search not to speak of the seizure or arrest."  (DSSUMF #18.)  This is in direct and material

5

contravention of the sentencing transcript, Sanders's express acceptance of the search terms and conditions on the record in open court, and his written acceptance of the warrantless search conditions are voluntary, knowing and binding.

B.   Other Relevant Arrests.

After Plaintiff was arrested in October 2002 but before the April 2004 sentencing hearing, Officer Bishop was dispatched to a food market on North Avenue on March 25, 2004 in response to a female claiming Sanders assaulted her with a broom, threatened to kill her with a gun, and tried to run her over with a car. (DSSUMF ## 6 and 7.)  Bishop arrested Plaintiff at his residence for assault with a deadly weapon, threats to commit a crime, and battery on a person he was dating.  (DSSUMF ## 8 and 9.)

In a separate incident, on July 28, 2004, Officer Bishop and another officer arrested Plaintiff without incident after receiving information he was wanted on two felonies - threats to commit a crime and dissuading a witness from testifying at trial - for allegedly threatening a female friend inside Taha's store. (DSSUMF #21.)  The broadcast indicated Sanders was known to carry a gun.  (*Id.*)

C.   Arrest At Issue: November 30, 2005

In his Third Amended Complaint, Plaintiff complains of a December 3, 2005 unlawful search and arrest by Officer Bishop. In his deposition, Plaintiff acknowledged that the actual date of the arrest was November 30, 2005 and he incorrectly stated the date in his complaint as December 3.  (Sanders Deposition

6

Transcript at 21.)

Defendant Bishop contends he and Officer Christopher Aranas made initial consensual contact with Sanders in an open parking lot on November 30 as Plaintiff walked northbound away from a group of people on the southeast corner of Fig and North Avenues, a corner known for narcotic use. (DSSUMF ## 25 and 26.) Officer Aranas drove the patrol car near Plaintiff. Plaintiff said he was just walking to the bus stop. (DSSUMF #26.) Officer Aranas asked him if he was on probation or parole. Officer Bishop asked Plaintiff the reason he was on probation. (*Id.*) Plaintiff stated "that information is already available." (*Id.*)

Plaintiff stated he was just going to the store and pointed east. (DSSUMF #27.) Defendant Bishop states he knew no store in that direction was open at that time of night. Defendant Bishop claims he recognized Sanders from his prior interactions and arrests of Sanders and believed Plaintiff was on probation and lying to the officers. (*Id.*) Bishop notes that his observation of Plaintiff's behavior led him to believe Plaintiff possibly had in his possession an illegal item or substance. (*Id.*) Plaintiff provided his identification and a records check was conducted.

Bishop contends he smelled a strong alcoholic odor coming from Plaintiff and observed "moderate eye lid flutter," a sign of possible narcotic use. (DSSUMF #28.) He further asserts that Plaintiff was uncooperative and argumentative during the encounter. The records check revealed Plaintiff was on active felony probation with a search condition and a no-alcohol condition. (*Id.*) Bishop searched Plaintiff's person and found no illegal items. He arrested him because "due to the no alcohol

7

condition and lying to officers about his probation status, I had probable cause to believe Mr. Sanders was under the influence of alcohol, and was in violation of his probation terms and conditions." (Bishop Declaration at 4.)

While a copy of the police reports for the March 2004 and July 2004 arrest incidents is provided, Defendants do not furnish a copy of the police report for the November 2005 incident.

D.  **Arrest At Issue: May 6, 2006**

Defendant Officer Ruiz observed a vehicle parked in the driveway of 347 W. Almy Street, partially in the driveway and partially on the road, at about 10:47 p.m. during his normal duties. (DSSUMF #30.) The area is a high-gang activity and narcotic use area and the car appeared suspicious to Ruiz because the house was far back from the road. (*Id.*) Officer Ruiz put a spotlight on the car and noticed a person sitting inside. He approached the car on the driver's side. The driver was Phillip Sanders and Ruiz determined he was on probation. (*Id.*)

Ruiz claims he observed the following symptoms in speaking with Sanders: dilated pupils, no pupillary reaction to light, eyelid tremors and involuntary muscle movements. (DSSUMF #31.) Ruiz states these symptoms are indicated when a person is under the influence of crack cocaine. (*Id.*) Ruiz contacted dispatch which relayed information that Sanders was on probation with a search and seizure condition and was subject to alcohol and narcotic testing. (DSSUMF #32.) Ruiz maintains he believed Sanders was under the influence of a controlled substance, suspecting crack cocaine usage, and that he was in violation of his probation. (DSSUMF #33.)

Ruiz arrested Plaintiff and contacted Plaintiff's female friend, who was in the house, to move Plaintiff's car instead of calling a tow truck to remove the car. (DSSUMF ## 33 and 34.) Defendants attach an FPD event report which lists dates and history Ruiz received when he ran Plaintiff's name with dispatch. Defendants do not provide the police report containing information about the arrest.

Plaintiff denies he was under the influence of any substance and claims the officers fabricated the description of his condition.

### III. **LEGAL STANDARD**.

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. Pro. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id*. A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). The evidence must be viewed in a light most favorable to the nonmoving party. *Indiana Lumbermens Mut. Ins. Co. v. West Oregon Wood Products,*

9

*Inc.*, 268 F.3d 639, 644 (9th Cir. 2001), *amended by* 2001 WL 1490998 (9th Cir. 2001). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of proof, the non-moving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Triton Energy Corp.*, 68 F.3d at 1221. The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux*, 263 F.3d at 1076.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue

10

> as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

"In order to show that a genuine issue of material fact exists, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 249). If the moving party can meet his burden of production, the non-moving party "must produce evidence in response....[H]e cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera*, 331 F.3d at 1078 (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)).

## IV. DISCUSSION.

**A. Waiver of Plaintiff's Fourth Amendment Rights With Respect to Warrantless Searches.**

Defendants contend that Plaintiff waived his Fourth Amendment right to be free from unreasonable search and seizure when he orally accepted and then signed the probation conditions from his April 2004 sentencing. Specifically, Defendants argue that California law allows a suspicionless search of a probationer who has a probation condition permitting warrantless searches, referred to as "searchable probation." Defendants cite

11

a series of California cases holding probationers subject to searchable probation have waived their Fourth Amendment rights. *See People v. Ramos*, 34 Cal.4th 494, 506 (2004)("[B]y accepting probation, a probationer consents to the waiver of Fourth Amendment rights in order to avoid incarceration."); *People v. Bravo*, 43 Cal.3d 600, 607 (1987) (probationer's consent to the probation search condition was "a complete waiver of that probationer's Fourth Amendment rights, save only his right to object to harassment or searches conducted in an unreasonable manner"); *People v. Brown*, 191 Cal.App.3d 761, 766 (1987) ("Defendant, by accepting probation with a condition of a search waiver, simply did not have a reasonable expectation of privacy. That is precisely the point of the condition."); *People v. Mason*, 5 Cal.3d 759, 765 (1971)("[A] probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.").

However, California state court cases are of limited authority. Defendants also contend the Supreme Court's decision in *Samson v. California,* 547 U.S. 843 (2006), which upheld suspicionless searches of parolees with parole search conditions under the Fourth Amendment, portends similar results for probation searches. Defendants argue the Court's reasoning in *Samson* - that parolees do not have a legitimate expectation of privacy - is equally applicable to probationers, in that probationers also do not have the same privacy rights afforded to average citizens. *Samson* stated:

> this Court has repeatedly acknowledged that a State's

12

> interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.

547 U.S. at 853. In another passage, the Court referred to "a parolees's substantially diminished expectation of privacy." *Id*. at 855. The Court also addressed the "concern that California's suspicionless search system gives officers unbridled discretion to conduct searches" by noting this concern "is belied by California's prohibition on arbitrary, capricious, or harassing searches." *Id*. at 856.

Defendants further contend that most parole search conditions in California are identical to probation search conditions and the expectation of the probationer with respect to privacy is similarly constricted. Defendants argue that the Ninth Circuit has consistently found no "constitutional difference between probation and parole for purposes of the Fourth Amendment." *Motley v. Parks*, 432 F.3d 1072, 1083 n. 9 (9th Cir. 2005)(en banc).

However, Defendants concede that the issue of whether warrantless *probation* searches need to be supported by reasonable suspicion has not been resolved by the courts. In *United States v. Knights*, the Supreme Court upheld a warrantless search of a probationer's residence where his acceptance of a probation search condition "significantly diminished [the probationer's] reasonable expectation of privacy." 534 U.S. 112, 120 (2001). But the Court declined to decide whether the probation condition completely eliminated the probationer's reasonable expectation of privacy such that a suspicionless search would be constitutional

13

because, in *Knights*, the search was supported by reasonable suspicion. *Id*. at 120, n. 6.

It is likely given the comparable situation and conditions imposed on both parolees and probationers that the Ninth Circuit would interpret *Samson* to also allow suspicionless searches of probationers on searchable probation. The Supreme Court has stated that both parolees and probationers have, respectively, "substantially" and "significantly" diminished expectations of privacy. *See Samson*, 547 U.S. at 855; *Knights*, 534 U.S. at 120. Moreover, California's protections against arbitrary, capricious or harassing searches serve as checks on police authority for both parolees and probationers. Finally, the Ninth Circuit has indicated in dictum in *United States v. Lopez* that it interprets *Samson*, which addressed a parole search, to have resolved the constitutionality of suspicionless searches left undecided by *Knights*, which dealt with a probation search. *United States v. Lopez*, 474 F.3d 1208, 1213-14 (9th Cir. 2007) (referring to footnote in *Knights* declining to address constitutionality of suspicionless probation search and stating "[w]e note that *Knights* left open the issue decided in *Samson*").

It is undisputed Plaintiff was on probation subject to warrantless search at the time of the arrests. The court transcript and probation recommendations report evidence clearly that warrantless search conditions were imposed on and accepted by Plaintiff. In light of *Samson*, there is no material fact dispute that Plaintiff could be searched for any reason, without a search or arrest warrant.

For the foregoing reasons, with respect to Plaintiff's

14

unlawful search claim, Defendants' motion for summary judgment is **GRANTED** as to both defendants.

B.  **False Arrest Claim**.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). Probable cause is a defense to a false arrest claim and exists when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002).

Plaintiff contends the officers arrested him without probable cause and even without any level of suspicion of criminal wrongdoing.  He argues the officers are lying when they state that Plaintiff showed signs of being under the influence of alcohol or a controlled substance.  He notes that no officer conducted a drug or alcohol test, despite the mandatory testing conditions stated in Plaintiff's probation order.  Plaintiff also points out that he was released without charges from both arrests after being detained multiple days.

Defendants argue both arrests were supported by probable cause, and they assert the defense of qualified immunity. Deciding qualified immunity entails a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, a court must ask whether, taken in the light most favorable to the plaintiff, the facts alleged show the officers' conduct violated a constitutional right.  *Id*.  If the answer to this question is

15

yes, the court must then inquire whether the right violated was "clearly established" by asking whether a reasonable officer could believe that the defendant's actions were lawful. *Id.* The traditional summary judgment approach should be used in analyzing the first step of the *Saucier* analysis:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right? Where the facts are disputed, their resolution and determinations of credibility are manifestly the province of a jury.

*Wall v. County of Orange*, 364 F.3d 1107, 1110-1111 (9th Cir. 2004) (internal citations and quotations omitted). In the second step, the court must ask whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted. Although this inquiry is primarily a legal one, where the reasonableness of the officer's belief that his conduct was lawful "depends on the resolution of disputed issues of fact...summary judgment is not appropriate." *Wilkins v. City of Oakland*, 364 F.3d 949, 1110-11 (9th. Cir. 2003) (citing *Saucier*, 533 U.S. at 216 (Ginsburg J., concurring)).

Officer Bishop contends he smelled an alcoholic odor coming from Sanders and observed "moderate eye lid flutter," a sign of narcotic use. Officer Ruiz maintains that he observed symptoms of use of a controlled substance by Sanders such as dilated pupils, no pupillary reaction to light, eyelid tremors, and involuntary muscle movements. Sanders argues he exhibited no such symptoms. He asserts that the officers are lying and used his probation status to harass him and arrest him without probable cause. He maintains that he has two witnesses who will

**attest to this - Glenda Tony and Milesa Nutt.**[1]

**This is a credibility determination - whether the officers' version of events is accurate or whether the Plaintiff's version is accurate.  As such, this genuine issue of material fact is in dispute and must be resolved by the trier of fact.**

**For the foregoing reasons, Defendants' motion for summary judgment with respect to the false arrest claim is DENIED**

**The motion granting severance of the two cases has been** GRANTED by separate order. IT IS SO ORDERED.

**Dated:   December 29, 2008**              /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE

---

[1] Defendants object to Sanders's reliance on these witnesses, arguing that Plaintiff did not identify them in his Rule 26 initial disclosures. Their statements are not considered for the purposes of this motion.

**17**